**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 93-571-CR-UNGARO/SIMONTON**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**VINCENT JOHNSON,**

      **Defendant.**
**_____/**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Superseding Petition for Offender Under Supervision (DE #1021, 2/20/08). This matter was referred to the undersigned by the Honorable Ursula Ungaro, United States District Judge, to take all necessary and proper action as required by law, including but not limited to an evidentiary hearing, with respect to whether or not the defendant's supervised release should be revoked (DE # 1029, 4/17/08). Based upon the Findings of Fact set forth below, it is recommended that the defendant's supervised release be revoked.

## BACKGROUND

Defendant Vincent Johnson was sentenced on March 10, 1995 to serve one hundred fifty-seven (157) months of imprisonment, followed by five years of supervised release based upon his conviction for conspiracy to possess with intent to distribute cocaine. His term of supervised release began on June 6, 2007, and his supervising probation officer since that date has been USPO Teresa Graham.

The defendant was arrested and initially appeared in court on February 5, 2008 (DE # 1014) on a Petition seeking revocation of his term of supervised release. On

February 18, 2008, the District Court accepted the Superseding Petition which is at issue here (DE #1021, 2/20/08).  At a status conference held on May 7, 2008, the parties advised the Court that the reason for the Superseding Petition was that the initial Petition had been filed under the wrong case number, but that the alleged violations were the same, and there was no need to have another appearance of the defendant in Court prior to holding the evidentiary hearing (DE # 1036). The Superseding Petition sets forth the following three violations:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1. | <u>Violation of Mandatory Condition</u>, by failing to refrain from violation of the law.  On or about January 15, 2008, Miami-Dade County, Florida, the defendant committed the offense of Grand Theft First Degree, contrary to Florida Statute 812.014(2)(a)(3). |
| 2. | <u>Violation of Mandatory Condition</u>, by failing to refrain from violation of the law.  On or about January 15, 2008, Miami-Dade County, Florida, the defendant committed the offense of Filing a False Police Report, contrary to Florida Statute 837.05(1). |
| 3. | <u>Violation of Standard Condition</u>, by failing to notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.  On or about January 15, 2008, the defendant was arrested by Miami-Dade Police Department in Miami-Dade County, Circuit Court case number F08-1815, and he failed to advise the U.S. Probation Officer. |

On May 19, 2008, an evidentiary hearing was held on the above violations.  The defendant was present at the evidentiary hearing, along with his counsel, and was advised of these violations, as well as his right to testify, or to decline to testify.

<u>LAW</u>

Pursuant to 18 U.S.C. § 3583(e)(3), in order to revoke a defendant's supervised release, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release."  The reasons for the revocation of the

2

defendant's supervised release and the evidence the court relied upon should be either formalized in written findings or orally announced and recorded or transcribed. *United States of America v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994). The Federal Rules of Evidence do not apply in a supervised release revocation hearing. In deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. In addition, the hearsay statement must be reliable. *United States of America v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). In the case at bar, where the defendant objected to the hearsay testimony, the undersigned required the government to produce percipient witnesses. Therefore, the government's request that the investigating detective be permitted to testify concerning the eyewitness identifications of the defendant as the perpetrator of the crime was denied.

## THE EVIDENTIARY HEARING

The government presented the testimony of U.S. Probation Officer Teresa Graham, Miami-Dade police detective William Kostopoulos, victim-witness Gregory Scott and civilian witness Mark Bacchus. The defendant did not present any affirmative evidence, but relied upon cross-examination of these witnesses to challenge the strength of the government's case. The factual dispute in this case centers on whether the government has proven that the defendant was the person who stole a trailer on January 15, 2008, and whether the defendant knowingly failed to timely report his arrest on those charges to his probation officer.

The defendant's term of supervised release began on June 6, 2007, and he has been supervised by United States Probation Officer Teresa Graham since that date. USPO Graham advised the defendant at their first meeting that it was important for him

3

to notify her within 72 hours of any arrest, and he signed a document acknowledging this requirement.

It is undisputed that on January 15, 2008, a 7-foot by 19-foot V-nose trailer was stolen from Camp-Out, a trailer store owned by Gregory Scott. The trailer was new, and had a value of approximately $10,000.00. At 2:30 or 3:00 that afternoon, an employee, Mark Bacchus, saw a white SUV back up to the trailer, which was parked on the side of the road. A passenger in the SUV then attached the trailer to the SUV, and drove away with it. The employee alerted the owner, and they followed the SUV while other employees called the police. The employee, Bacchus, drove, and the owner, Scott, was in the passenger's seat. The SUV ran into a tree, and the trailer became unhitched. The SUV continued to flee, however, until it spun out of control and crashed again. Mr. Scott and Mr. Bacchus were right behind the SUV, and stopped across the street when the SUV crashed. The occupants of the SUV then fled the scene, running across a field and into a housing development. The trailer suffered extensive damage, and the owner estimated that it was worth approximately $500.00 after the crash.

Gregory Scott testified that he could not see either the driver or passenger when they were driving, although he testified that the passenger opened the door and looked back two or three times, and the driver opened the door and looked back at least once. Mark Bacchus testified that the passenger opened the door and looked back at least once. When the SUV finally stopped, both Mr. Scott and Mr. Bacchus were able to see the subjects as they left the SUV. They were about 30 feet away at the time. Mr. Scott testified that the driver kept turning around as he ran away, and he got a good look at his face, as well as his physical appearance. The driver was about 300 pounds, and wore a white shirt with brown and orange at the top, in a tie-dye type of pattern. Mr. Bacchus

4

testified that the driver was wearing a white shirt with a beige or peachy colored top, and weighed between 250 and 300 pounds, and that he had a little scruffy beard.[1] Further investigation revealed that the SUV was owned by the defendant's mother, who told police that her son and nephew had taken the car to change a fan belt on it for her.

At approximately 3:30 or 4:00 p.m., Detective William Kostopoulos was dispatched to respond to the scene of the crash. He interviewed both the victim, Mr. Scott, and the employee, Mr. Bacchus. Mr. Scott described the driver as six feet tall, approximately 300 pounds, and wearing an orange shirt and dark pants.

At approximately 3:40 p.m., the defendant, Mr. Johnson, reported to the police that he had just been carjacked at a nearby Publix parking lot. Mr. Johnson initially told Officer Hernandez that he had been driving a white SUV on S.W. 127th Avenue and had turned into the Publix parking lot when two black males struck him; he lost consciousness, and he woke up on the side of the road. He gave a detailed description of the perpetrators, including the fact that one of them had four or five lower gold teeth, and was wearing a white T-shirt and jeans. The police told him that his story sounded absurd since it would be impossible to obtain such a detailed description if he had been driving down the street when he was struck and became unconscious. Mr. Johnson then changed his story and said that the men had waved him down, that he had left the car, and that he was then knocked unconscious. The police canvassed the parking lot, but were unable to locate anyone who witnessed a car jacking.

The defendant matched the description, given by Scott and Bacchus, of the

---

[1] Neither witness recalled seeing the large lettering, or the picture of a badge, both of which were clearly visible on the front of the shirt worn by the defendant at the time they identified him as the driver, approximately one hour later.

person who had stolen the trailer, and therefore Detective Kostopoulos was notified of these events.  Detective Kostopoulos told Mr. Scott that the police wanted him to look at someone to see if he was the person who had stolen the trailer, and he drove Mr. Scott to the Publix parking lot where the defendant was meeting with the police.  As soon as they pulled into the Publix parking lot, Mr. Scott identified the defendant as the person who had driven the SUV. This was approximately between 45 minutes and an hour after the theft occurred.  When they arrived at the parking lot, there were a number of people in the parking lot, but it was clear to Mr. Scott that the person the police wanted him to view was the defendant.  Mr. Scott testified that he was able to immediately recognize the defendant because his view of the subject was fresh in his mind, and he recognized his face, his clothes, and his size.

Mr. Bacchus was also told that there was somebody the police wanted him to look at, and he was brought to the scene separately by another police officer.  He testified that when he arrived at the parking lot he saw the defendant standing between two police officers and he immediately recognized the defendant as the driver of the SUV, based upon his face, size and clothing.

The defendant was then arrested for committing grand theft with respect to the trailer, in violation of Florida Statute § 812.014(2)(a)(3), and for filing a false police report regarding the alleged carjacking, in violation of Florida Statute § 837.05(1).

During their testimony, both Mr. Scott and Mr. Bacchus identified the photograph of the defendant taken at the time of his arrest, and the defendant in the courtroom, as the driver of the SUV. Defense counsel effectively cross-examined both eyewitnesses, establishing that they had only a very brief time to view the driver of the SUV at the time of the robbery, that this was a stressful situation, that they viewed him from a distance,

that they were both aware of the person that the police wanted them to look at in the Publix parking lot, and that neither of them had initially described large lettering on the shirt, or other details.   Defense counsel also argued that their descriptions were more detailed than what Detective Kostopoulos stated they had told him at the scene of the crime, and that both witnesses were likely influenced by their view of the defendant in the Publix parking lot, which caused them to identify the defendant in the courtroom during their testimony.

On January 17, 2008, two days after the defendant's arrest, U.S. Probation Officer Graham tried to contact the defendant at his place of employment, but he was not there. She also went to the defendant's house, and he was not present.  She was unable to contact him over the next several days, and therefore she ran a criminal records check. USPO Graham learned that he had been arrested on January 15, 2008, and released from jail on January 21, 2008.

On January 24, 2008, USPO Graham called the defendant and told him to meet her in her office.  The defendant complied with this direction.  When he arrived, USPO Graham asked him if everything was okay, and he responded that it was.  She told him that she had tried to see him at his job, but he was not there.  He said that he had some personal problems and could not be at work that day.  Finally, she told him that she knew he had been arrested, and asked if he wanted to share with her what had happened.  He admitted that he had been arrested, and told her that he had loaned the SUV to a friend who had wrecked it.  He could not give the name of the friend.  USPO Graham did not question him about the inconsistencies between what he told her and what he had told the police.

7

## FINDINGS

### A. Violation One

The government has proven, by a preponderance of the evidence, violation number one, that the defendant committed the offense of Grand Theft First Degree.

The undersigned recognizes the potential for an unreliable identification by eyewitnesses, particularly where a perpetrator is seen from a distance for only a brief period of time, and where the initial identification occurs during a show-up.  In this case, both witnesses were unequivocal about their identifications, and were unshaken by penetrating cross-examinations of the eyewitnesses and the investigating detective, which exploited the weaknesses in their identification testimony.   Moreover, as stated at the conclusion of the hearing, the identification of the defendant in the case at bar is significantly buttressed by the fact that his mother's SUV was used to commit the theft, that his mother said she had given the car to the defendant on that day to have the fan belt changed, that _after_ the theft and crash he reported he was carjacked in this SUV, and that he gave inconsistent stories regarding his use of that SUV–giving the police two different versions of the carjacking and later telling his probation officer that he had lent the SUV to a friend.  Under these circumstances, the undersigned finds that the government has proven by a preponderance of the evidence that the defendant was the person driving the white SUV which was used to steal the trailer.

### B. Violation Two

The government has proven, by a preponderance of the evidence, violation number two, that the defendant filed a false police report.   Based upon the above evidence, which established that the defendant had committed the theft of the trailer, the undersigned also finds that his report that the white SUV had been carjacked was false.

8

<ins>        C.  Violation Three</ins>

The government has proven, by a preponderance of the evidence, violation number three, that the defendant failed to notify his probation officer within 72 hours of his arrest on the above charges.  The defendant was arrested on January 15, 2008, and released from state custody on January 21, 2008.  Thereafter, on January 24, 2008, he met with his probation officer and was given the opportunity to advise her of his arrest.  He failed to do so until she confronted him with the fact that she was aware of this arrest.  Defense counsel argued, without evidentiary support, that the defendant thought his mother had told his probation officer of his arrest and that therefore she was aware of it.  This explanation, even if it had evidentiary support, is not credible since does not explain the defendant's evasive response that he was experiencing "personal problems" when the probation officer directly questioned him regarding his whereabouts on January 17, 2008–which was the day she tried to find him at his place of employment and his home, at which time he was in jail on these charges.

<ins>RECOMMENDATION</ins>

The undersigned recommends revocation of the defendant's supervised release based on the undersigned's findings that the government proved all three violations.

The parties have ten (10) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.

*LoConte v. Dugger*, 847 F. 2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F. 2d 1144, 1149 (11th Cir. 1993).

      **DONE AND SUBMITTED in Miami, Florida on May 29, 2008.**

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies provided to:**
**The Honorable Ursula Ungaro, United States District Judge**
**All counsel of record via CM/ECF**

10